***********
The undersigned have reviewed the prior Opinions and Awards based upon the record of the proceedings before Deputy Commissioner Jones and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and in a Pre-Trial Agreement as
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Harbor Specialty Insurance Group is the carrier on risk and Interstate Insurance Service Group is the Third Party Administrator.
4. Plaintiff's average weekly wage is an issue in this case and defendants have submitted a Form 22 to be used as part of that determination.
5. Plaintiff's medical records were stipulated into evidence as Stipulated Exhibit 1.
6. Industrial Commission Forms and filing relevant to this case were stipulated into evidence as Stipulated Exhibit 2.
7. The depositions of Tammy Doerter, John H. Knab, M.D., John Miller, M.D., and Rufus H. Warren, M.D. have been received and admitted into evidence.
8. The issues are: (i) whether plaintiff sustained a compensable injury by accident on or about March 20, 2001; (ii) if so, what compensation, if any, is due plaintiff; and (iii) what was plaintiff's average weekly wage?
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was forty-six (46) years old. Plaintiff attended high school through the eleventh grade and later obtained her GED. She has spent most of her adult working life in the motel/hotel industry, but she has also done housekeeping and worked in bars and restaurants.
2. Plaintiff began her employment with defendant-employer on March 15, 2001 as the manager of Loggerhead Inn.
3. Plaintiff was supplied with an apartment at the Loggerhead Inn as part of her compensation. Plaintiff did not pay for the rent of this apartment valued at $1,000.00. Plaintiff's total compensation for being the manager of Loggerhead Inn was $2,600.00 per month yielding an average weekly wage of $650.00. Plaintiff's average weekly wage was $650.00 yielding a compensation rate of $433.36.
4. Plaintiff, with the help of her son and a friend, moved herself into the apartment. Plaintiff was moving furniture and boxes and did not experience any pain in her back during this move.
5. Plaintiff has had prior back pain and occasionally has received treatment from a chiropractor, William C. Mead, the last date being August 2000. In addition, plaintiff had sought treatment, including epidural steroid injections, from Dr. Shyam Garg, a family medicine physician, in July 2000 and on March 22, 2001 complaining of low back pain radiating into the left leg. Plaintiff had recovered from back pain at the time of her alleged injury. The severity of her back pain after the alleged injury was much greater than before.
6. On or about April 11, 2001 three women checked into non-smoking rooms at the Loggerhead Inn. After these women had checked out, plaintiff had other individuals wanting a particular room. Plaintiff went to that room and began to prepare for the new guests. Plaintiff noticed that since the bed had been pushed up against the wall, she would need to center the bed in the room. When she was attempting to slide the bed back into its position, the bed did not move. Plaintiff pushed the bed again and this time she felt a sting in her back.
7. Initially, plaintiff believed she had pulled a muscle. Plaintiff continued to work that day. The pain in her back was not severe until that evening. The next morning, the pain became even more severe.
8. Within the next few days Hannah Mathews, a coworker who had started work with defendant-employer on April 6, 2001, assisted plaintiff by tying her shoe since plaintiff's back was hurting so badly. Plaintiff shared with Ms. Mathews how she had injured her back. Plaintiff also asked another coworker, Tammy Doerter, to work the office while she went to the doctor.
9. Plaintiff was unable to report the incident to her employer, Bud Wamsley on or about April 11, 2000 because he had left to go to Virginia because his mother had a heart attack.
10. Plaintiff appears to be a poor historian as she thought the date of injury was March 20 or 21, 2001. However, the testimony of plaintiff and that of two co-workers and her employer are reconcilable when the injury date of "on or about April 11, 2001" is utilized.
11. On April 13, 2001, plaintiff presented to Dr. Mead, a chiropractor who had treated her previously and complained of right leg and low back pain. She had experienced radiating pain in the left leg in the past but not in the right leg.
12. Dr. Mead placed plaintiff on restrictions, that she could not bend, not lift over ten pounds or reach overhead due to her low back pain.
13. Plaintiff continued to try to work but was very limited with her restrictions and pain that she was experiencing.
14. On May 7, 2001, plaintiff went to Dr. Garg because she was not improving and the medicine and the treatment rendered by Dr. Mead were not helping.
15. On May 24, 2001, plaintiff was seen by Rufus H. Warren, M.D to whom she indicated she had injured her low back when moving a bed and she was "hurt on job". Dr. Warren recommended an MRI and ultimately referred plaintiff to Dr. Melin at Coastal Neurosurgical Associates and Spine Center.
16. Dr. Melin saw plaintiff on July 11, 2001. Dr. Melin indicated plaintiff should be seen by the Center for Pain Management for a trial of epidural steroids and eventually gave the diagnosis of back and right leg pain of probable discogenic etiology and recommended continued treatment.
17. Plaintiff followed Dr. Melin's recommendation concerning the Center for Pain Management. Epidural steroid injections were performed on July 25, 2001 and August 21, 2001 at the L5-S1 level. On October 3, 2001, plaintiff received a right S1 joint injection.
18. Plaintiff was also referred to Dr. Knab, a board-certified pain specialist and anesthesiologist, who examined plaintiff on September 16, 2001 indicating plaintiff should have a lumbar discogram.
19. A discogram was performed and plaintiff was sent for a CT scan that indicated an annular tear at L4-5 and a bulge at L5-S1.
20. Plaintiff continued to treat with the Center for Pain Management. The facet block, epidural treatment and repeat joint injections were unsuccessful.
21. On September 4, 2002, Dr. Knab performed a nucleoplasty at two levels, L4-5 and L5-S1. As this procedure was not helpful, Dr. Knab referred plaintiff to Jon Miller, M.D., an orthopedic spine surgeon.
22. Dr. Miller examined plaintiff on October 10, 2002 and ordered a new MRI be performed. After evaluating the results of the tests and seeing plaintiff, Dr. Miller recommended a decompression and fusion at both levels.
23. Dr. Miller performed surgery in December 2002 and continues to treat plaintiff to date. Plaintiff has not been released to return to work and is not at maximum medical improvement.
24. Dr. Warren has indicated there is a causal relationship between plaintiff's annular tear at L4-5 and the bulge at L5-S1.
25. Dr. Miller's testimony establishes a causal relationship between plaintiff's work-related injury when moving the bed and the back pain and right leg pain she has experienced as a result of the annular tear at L4-5 and the bulge at L5-S1.
26. The Full Commission finds plaintiff's testimony concerning the events surrounding her back injury by accident to be credible. Plaintiff experienced a specific traumatic incident while pushing a bed during the regular course of her assigned work.
27. Plaintiff has a reasonable excuse for not filing a written notice of her claim as she reported the incident with the bed personally to Mr. Wamsley upon his return from Virginia and defendant has not been prejudiced by a lack of written notice.
 ***********
Based on the foregoing Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course of her employment on or about April 11, 2001 when she suffered a specific traumatic incident to her back. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has been disabled since May 24, 2001 as result of her compensable injury by accident. N.C. Gen. Stat. § 97-29. As result of her compensable injury by accident, plaintiff is entitled to temporary total disability compensation at a rate of $433.36 from May 24, 2001 and continuing until further order from the Commission. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to receive medical treatment including the treatment provided by Dr. Warren, Dr. Garg, Dr. Melin, Dr. Miller, Dr. Knab, and the Center for Pain Management so long as such treatment should effectuate a cure, alleviate plaintiff's pain or reduce plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
4. Plaintiff's claim is not barred by the provisions of N.C. Gen. Stat. § 97-22 in that plaintiff personally reported to her supervisor Mr. Wamsely regarding the work-related incident with the bed when she injured her back.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. For her temporary total disability, plaintiff is entitled to temporary total disability compensation from May 24, 2001 and continuing until further order from this Commission. Said amount that has accrued to date shall be paid in a lump sum, subject to an attorney's fee approved in Paragraph 3.
2. Defendants shall pay all medical expenses resulting from plaintiff's compensable injury by accident.
3. A reasonable attorney's fee of twenty-five (25%) percent of compensation due plaintiff under Paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: twenty-five (25%) percent of lump sum due plaintiff under Paragraph 1 of this AWARD shall be deducted from that sum and paid directly to plaintiff's counsel. In regards to future compensation, plaintiff's counsel shall receive every fourth check.
4. Defendants shall pay the costs.
This the 27th day of February 2004.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/__________ THOMAS BOLCH COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER